**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

| | |
|---|---|
| JARED P LACEY, | |
| Plaintiff, | |
| v. | CASE NO. 1:26-CV-319-HAB-ALT |
| LLOYD ARNOLD, et al., | |
| Defendants. | |

## OPINION AND ORDER

The matter before the Court is the Motion for Temporary Restraining Order and Preliminary Injunction filed by Plaintiff Jared P. Lacey ("Lacey"), proceeding pro se. (ECF No. 3). Following a telephonic status conference held on July 13, 2026, the Court directed Defendants Lloyd Arnold, the Indiana Department of Correction ("IDOC"), and Chelsea Foster (together, "Defendants") to submit a response brief by July 15, 2026. (ECF No. 6). Defendants timely filed their Response (ECF No. 10), and Lacey filed his Reply one day later (ECF No. 11). On July 20, 2026, Lacey filed a Notice (ECF No. 14), to which Defendants responded on July 22, 2026 (ECF No. 16). For the below reasons, the Court GRANTS the Motion for Temporary Restraining Order and Preliminary Injunction (ECF No. 3).

### I.    BACKGROUND

At the background of this case are Lacey's two sex offender convictions—one in 2006, in Illinois, and one in 2007, in Indiana. (ECF No. 1 ¶¶ 9, 11). Lacey alleges that, at the time of his release in 2008, he was required to register with the Indiana sex offender registry for a period of ten years. (*Id.* ¶ 10). Lacey alleges that IDOC instead "unilaterally" imposed a lifetime registration requirement. (*Id.* ¶ 11).

Lacey challenged that lifetime registration requirement in state court, filing a "Petition for Removal from Sex Offender Registry, Mandamus, and Review of Administrative Agency Decision" in Allen County Superior Court on December 10, 2025. (ECF No. 10-3). He sought removal from the registry pursuant to Indiana Code § 11-8-8-22. *Id.*

On February 6, 2026, the parties to the state-court lawsuit submitted a Joint Stipulation of Dismissal with Prejudice based on an agreement that Lacey no longer qualified for lifetime registration under Indiana Code § 11-8-8-19(e). (ECF No. 10-4). Lacey also received a letter from IDOC at that time stating that his "obligation to register in Indiana has effectively expired" as his "previous lifetime registration under Ind. Code 11-8-8-19(e) for two unrelated offenses is no longer applicable." (ECF No. 1-1 at 4).

At the same time as Lacey's case was progressing in Allen County Superior Court, the Indiana Sex Offender Registration Act ("SORA") was undergoing legal challenges. Ultimately, in *Peters v. Quakenbush*, the Indiana Supreme Court held that Indiana Code § 11-8-8-19(f), which requires an individual "who is required to register as a sex or violent offender in any jurisdiction" to register for the longer of the applicable periods, applied only where the individual had a *current* registration obligation in another jurisdiction. 260 N.E.3d 919, 924 (Ind. 2025). In response to that decision, the Indiana General Assembly amended Indiana Code § 11-8-8-4.5(b) to expand the definition of "sex offender" to include individuals who have been designated as sex offenders or subjected to registration requirements in another jurisdiction. As relevant here, these amendments—originally known as House Bill 1303—modify the definition of "sex offender" to include:

> (b)(1) a person who is required to register as a sex offender in any jurisdiction;
> (b)(2) a person who has been designated:
>     (A) a sex offender;
>     (B) a sexually violent predator; or

2

> (C) with a substantially equivalent designation;
> in another jurisdiction and who was or would be subjected to the sex offender registration reporting requirements in the other jurisdiction if the person resided, worked, volunteered, attended school, or owned real property in that jurisdiction, as determined by the department.

Ind. Code § 11-8-8-4.5(b). This amended definition went into effect on July 1, 2026.

On May 14, 2026, IDOC sent Lacey a letter titled "Notice of Registration Obligation under Indiana Law," stating that the amendments to § 11-8-8-4-5(b) created a new registration requirement for Lacey. (ECF No. 1-1 at 6). In their response brief, Defendants explain that Lacey is a lifetime registrant in Illinois, so the law—as amended—now classifies him as a sex offender requiring lifetime registration in Indiana. (ECF No. 10 at 4). IDOC's May 14 letter stated that Lacey could petition the IDOC for review; Lacey submitted such a request on May 29, 2026. (ECF No. 1-1 at 9-50). On June 24, 2026, IDOC mailed Lacey a "Final Determination of Registration Requirement," stating that IDOC had not received any response from Lacey to the initial notice letter and notifying him that, effective July 1, 2026, he would be required to register as a sex or violent offender under Indiana Code 11-8-8. (ECF No. 1-1 at 60-61).[1]

On June 30, 2026, Lacey filed an "Emergency Verified Petition to Enforce Stipulation of Dismissal and for Temporary Restraining Order and Preliminary Injunction" in Allen County Superior Court—in the same case in which he had litigated his prior lifetime registration requirement. (ECF No. 10-6). On July 9, 2026, Lacey filed his Complaint in this Court, alleging violations of the United States Constitution's Ex Post Facto and Due Process clauses. (ECF No.

---

[1] On July 10, 2026, after this suit was filed, IDOC sent Lacey a letter notifying him that it has received his Request for Review and Determination of Non-Applicability and that it is now under review. (ECF No. 10-7).

3

1). He also filed a Motion for Temporary Restraining Order and Preliminary Injunction. (ECF No. 3).

The Court held a telephonic status conference on the motion on July 13, 2026. (ECF No. 6). During that conference, the Court directed Defendants to file a response brief by July 15, 2026, and Lacey to file any reply by July 16, 2026. (*Id.*) Both parties filed timely briefs.[2]

On July 20, 2026, Lacey filed a Notice of Supplemental Development (ECF No. 14). This filing notifies the Court that the judge in Lacey's state-court case issued an order stating that, because the case had been dismissed with prejudice on February 6, 2026, Lacey is required to initiate a new lawsuit in which to file his petition. (*Id.*) Lacey stated in the notice that he will not be opening a new state case. Defendants filed a response to this notice on July 22, 2026. (ECF No. 16).

## II.    ANALYSIS

Defendants argue, as a threshold matter, that the Court should abstain from hearing this case under either the *Colorado River* or *Pullman* doctrines of abstention. *See* ECF No. 10 at 6-10. They argue in the alternative that Lacey has failed to meet his burden to demonstrate that injunctive relief is necessary. *See id.* at 11-23. The Court will first address the abstention issue before turning to the merits of his motion for injunctive relief.

### A.  Abstention

#### 1.  Pullman

Defendants first argue that the Court should abstain from hearing this case under the doctrine established by the Supreme Court in *Railroad Commission v. Pullman Company*, 312

---

[2] Lacey filed his reply brief on July 16, 2026, along with a motion for leave to file reply one day out of time. (ECF Nos. 11-12). The Court granted the motion and accepted Lacey's reply as timely. (ECF No. 13).

U.S. 496 (1941). "The main purpose of the *Pullman* doctrine is to avoid, if possible, declaring a state statute unconstitutional, by giving the state courts a chance to interpret it narrowly." *Mazanec v. N. Judson-San Pierre Sch. Corp.*, 763 F.2d 845, 847 (7th Cir. 1985). *Pullman* abstention is warranted "only when (1) there is substantial uncertainty as to the meaning of the state law and (2) there exists a reasonable probability that the state court's clarification of state law might obviate the need for a federal constitutional ruling." *Int'l Coll. of Surgeons v. City of Chicago*, 153 F.3d 356, 365 (7th Cir. 1998). Neither of the circumstances necessary for *Pullman* abstention is present here.

Defendants argue that the Court should abstain under *Pullman* because Lacey's "constitutional claims rest on an unresolved question of Indiana law that should be addressed by Indiana courts in the first instance." (ECF No. 10 at 7). More specifically, they argue that "[t]he interaction between the amended definition of 'sex offender' and the unchanged requirements of § 11-8-8-19(f) present a question of Indiana statutory interpretation that has not yet been resolved," and that that interaction is "essential" to Lacey's constitutional claims.

It is true that the interaction between the two provisions has yet to be addressed by Indiana state courts. However, the Court finds that *Pullman* abstention is not appropriate here because there is no substantial uncertainty as to the meaning of the state law. The amended definition of sex offender appears to directly address Lacey's exact situation. Lacey qualifies as a sex offender under the new § 11-8-8-4.5(b)(2)(C), as he "[is] or would be subjected to the sex offender registration reporting requirements in [another] jurisdiction if he resided, worked, volunteered, attended school, or owned real property in that jurisdiction." And because he qualifies as a sex offender, § 11-8-8-19(f) also applies to him, which directs that "[a] person who is a (1) sex offender

5

under section 4.5 of this chapter . . . shall register for the period required by another jurisdiction or the period described in this section, whichever is longer."

Further, it is not clear to the Court that a state court's interpretation of the interaction between the two provisions would "obviate the need for a federal constitutional ruling." If the state court does find that Lacey is required to register, pursuant to the statute as amended—the likeliest outcome, given the statute's lack of ambiguity—Lacey's ex post facto claim would remain unresolved. For these reasons, the Court declines to exercise *Pullman* abstention here.

### 2. Colorado River

Second, Defendants argue that the Court should abstain from hearing this case under the doctrine established by the Supreme Court in *Colorado River Water Conservation Dist v. United States*, 424 U.S. 800, 817 (1976). Pursuant to the *Colorado River* doctrine, a federal court may stay a lawsuit in exceptional circumstances when there is a concurrent state proceeding and when the stay would promote "wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Colorado River*, 424 U.S. at 817. To determine whether a stay under *Colorado River* is appropriate, courts conduct a two-part analysis. *See DePuy Synthes Sales, Inc. v. OrthoLA, Inc.*, 953 F.3d 469, 477 (7th Cir. 2020). "The first question is whether the concurrent state and federal actions are actually parallel. If so, the second question is whether the necessary exceptional circumstances exist to support" abstention. *Id.* (internal quotation marks omitted).

Regarding the first part of the analysis, the Seventh Circuit has explained that "[t]wo suits are considered parallel when substantially the same parties are contemporaneously litigating substantially the same issues in another forum. Formal symmetry is unnecessary, as long as there is a substantial likelihood that the state litigation will dispose of all claims presented in the federal

case." *Id.* (internal quotation marks omitted). When Defendants filed their responses and first argued for *Colorado River* abstention, Lacey had a concurrent state action, in which it is likely the Court would have found that substantially the same parties were litigating substantially the same issues. However, since that response was filed, the state court issued its order notifying Lacey that, because he had filed his petition in a closed case, he would have to file it again under a new case number in order to proceed. Lacey has notified the Court and the Defendants that he does not intend to refile the petition in a new state case. Therefore, even if the Court were to have found the Indiana state case sufficiently parallel to the one before us now, it can no longer do so.

In its response to Lacey's Supplemental Notice, Defendants argue that *Colorado River* still applies. They argue that there still exists a parallel case, as Lacey has asserted that he has an "active petition pending in Madison County Circuit Court, Illinois," to challenge "any Illinois registration obligation." (ECF No. 16 at 1-2 (citing ECF No. 12 at 13)). Defendants argue that because Lacey's Illinois registration requirement is the basis of his Indiana registration requirements, the Illinois registration requirement is "the exact issue at the center of this matter," and the suits are sufficiently parallel.

The Court disagrees. First of all, Lacey's position as the plaintiff in both suits is not sufficient to render the parties to both actions "substantially the same." Second, the issues in both cases are not "substantially the same." While Lacey's status with respect to the Illinois registry is certainly relevant to the suit before this Court, the two suits are considering different sex offender registry statutes. Further, the effect of the Indiana state court's prior stipulation of dismissal and the constitutional question are not before the Illinois court.

Because the Court finds that Lacey no longer has a pending, parallel state-court action, it declines to abstain from hearing this case under *Colorado River.*

### B. Injunctive Relief

To obtain a preliminary injunction, a moving party "must make a threshold showing that: (1) absent preliminary injunctive relief, he will suffer irreparable harm in the interim prior to a final resolution; (2) there is no adequate remedy at law; and (3) he has a reasonable likelihood of success on the merits." *Tully v. Okeson*, 977 F.3d 608, 612-13 (7th Cir. 2020). If the movant makes the required threshold showing, "the court then must weigh the harm the denial of the preliminary injunction would cause the plaintiff against the harm to the defendant if the court were to grant it." *Speech First, Inc. v. Killen*, 968 F.3d 628, 637 (7th Cir. 2020).

### 1. Irreparable Harm

A successful showing of irreparable harm requires the moving party to "establish that he is likely to suffer irreparable harm in the absence of preliminary relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Lacey argues that he faces irreparable harm including "the risk of arrest, criminal prosecution, and loss of employment that cannot adequately be remedied by state court proceedings." (ECF No. 1 ¶ 57). In response, Defendants cite two cases for the proposition that "[o]ther courts within the Seventh Circuit have found this argument to be unpersuasive." ECF No. 10 at 11-12 (citing *Williams v. Arnold*, 2026 WL 248286 (N.D. Ind. Jan. 30, 2026); *Kitterman v. City of Belleville*, 2020 WL 3316070 (S.D. Ill. June 20, 2020)).

In *Williams*, after a conviction, a plaintiff was given a lifetime term of supervised release that required that he register as a sex offender. 2026 WL 248286, at *1. After a court modified the terms of his supervised release, the plaintiff sought a declaratory judgment stating that he should be removed from the sex offender registry. *Id.* The court found that the plaintiff was properly required to register, denying the relief sought—the plaintiff subsequently filed an emergency motion for stay pending appeal. *Id.* at *1-2. The consideration of that motion required the court to

8

determine whether the plaintiff was facing irreparable him. The plaintiff argued that the opinion stating he was properly required to register imposed on him "immediate exposure to criminal liability, arrest, prosecution, and incarceration"—the court found this unpersuasive. *Id.* at *4. The court explained that (1) the plaintiff had already been required to register as a sex offender following his release from custody in 2020, (2) the plaintiff was aware that he may still be required to register as a sex offender even with the modification to his supervised release, and (3) no prior ruling in the underlying criminal matter deemed plaintiff exempt from the registry. *Id*. For those reasons, the Court had not changed the status quo—the plaintiff had always been required to register, the court simply confirmed that to still be true. *Id.*

The Court finds *Williams* easily distinguishable from the case at hand. The *Williams* court was clear that its finding on the question of irreparable harm was based on the fact that "the Court ha[d] not changed the status quo." *Id.* at *4. The plaintiff had always been required to register, there had never been a court order stating that he was not required to register, and the plaintiff, even when challenging the requirement, had always been "aware" that he may still be required to register, so the plaintiff did not face irreparable harm. Here, while subject to a registration requirement in the past, Lacey is not currently on the sex offender registry. And—in a crucial distinction from the plaintiff in *Williams*—he *had* been subject to a court order stating that his registration obligation had ended. He was not "aware" that he may still be subject to a registration requirement.[3]

---

[3] The situation in *Kitterman* is even less helpful to the Defendants' position. Similarly to *Williams*, in that case, the plaintiff filed a motion for stay pending appeal of a court's finding that he was subject to a sex offender registration requirement. 2020 WL 3316070, at *1. The court found that the plaintiff had not established a likelihood of irreparable harm because he asserted that he would continue to suffer constitutional violations that the court had already found he was not suffering. *Id.* at *2. Defendants have not explained how this is relevant to Lacey's position.

Finally, "[i]t is well established that the existence of a continuing constitutional violation constitutes proof of an irreparable harm." *Hope v. Comm'r of Ind. Dep't of Corr.*, 2017 WL 1301569, at *7 (S.D. Ind. Apr. 6, 2017) (internal quotation marks omitted). Because the Court finds that Lacey is at least reasonably likely to succeed on his ex post fact claim, he has satisfied the irreparable harm prong.

### 2. No Adequate Remedy at Law

Parties seeking injunctive relief must also make a threshold showing that any remedy at law would be inadequate. *Cooper v. Salazar*, 196 F.3d 809, 817 (7th Cir. 1999). The term "inadequate" does not mean "wholly ineffectual" but rather "seriously deficient as a remedy for the harm suffered." *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 386 (7th Cir. 1984).

Defendants argue that Lacey's request for injunctive relief fails at this step because his requested relief—removal from the sex offender registry—is available through Indiana's statutory removal procedure. (ECF No. 10 at 12; ECF No. 16 at 2-3). Specifically, Indiana Code § 11-8-8-22 allows an offender to petition for removal from the Indiana sex offender registry. Defendants note that Lacey has taken prior advantage of that statute with success, as his earlier state-court case resulted in his removal from the registry due to improper application of Indiana Code § 11-8-8-19(e). (ECF No. 16 at 3-4). "His decision to pursue emergency relief in a closed case, rather than filing the action contemplated by Indiana Code § 11-8-8-22," they argue, "does not render the available state remedy inadequate." *Id.* at 4.

The Court disagrees, finding that Indiana Code § 11-8-8-22 does not provide Lacey with an adequate remedy at law for the harm he alleges here. What Lacey seeks is a determination that IDOC's decision to require him to re-register with the Indiana sex offender registry is unlawful, as it violates the ex post facto clause of the United States Constitution. The Indiana statute does not

10

provide relief for offenders seeking removal from the registry due to potential Constitutional violations.

### 3. Likelihood of Success on the Merits

The Court also finds that Lacey has a reasonable likelihood of success on the merits of his ex post facto claim.[4] The ex post facto clause of the United States Constitution "prohibits states from passing ex post facto laws—those which retroactively alter the definition of crimes or increase the punishment for criminal acts." *Hope v. Comm'r of Ind. Dep't of Corr.*, 9 F. 4th 513, 530 (7th Cir. 2021) (internal quotation marks omitted) (citing U.S. Const. art. I, § 10). The Indiana Constitution, similarly, provides that "[n]o ex post facto law . . . shall ever be passed." Ind. Const. art. I, § 24. While Lacey does not specifically bring a claim for violation of the ex post facto clause of the Indiana Constitution, the Court will construe his Complaint as bringing claims under both clauses.[5]

---

[4] The court need not reach Lacey's Procedural and Substantive Due Process claims because it finds he is likely to succeed on his ex post facto claim. *See Hope*, 2017 WL 1301569, at *7.

[5] In his Complaint, Lacey notes that the Indiana Supreme Court has held that "[s]ex offender registration requirements constitute punishment for ex post facto purposes when they impose affirmative obligations and significant restrictions on registrants beyond what existed at the time of their offense" under an Indiana constitutional provision that is "parallel" to the provision in United States Constitution. (ECF No. 1 ¶ 34). The cases he cites in his preliminary injunction motion and his reply brief are all Indiana state cases interpreting the Indiana clause. *See* ECF No. 3 at 3; ECF No. 12 at 9-12. Defendants' briefing also cites almost exclusively to Indiana cases interpreting the Indiana Clause. *See* ECF No. 10.

In cases in which plaintiffs bring challenges under the ex post facto clauses of both the United States and Indiana Constitutions, the Indiana Supreme Court has noted that, while the analytical framework used to analyze both clauses is the same, the analysis is independent—and the Indiana clause provides a broader protection. *See Jensen v. State*, 905 N.E.2d 384, 390 (Ind. 2009) (noting that the Indiana Supreme Court, in *Wallace v. State*, 905 N.E.2d 371 (Ind. 2009), found the Indiana Sex Offender Registration Act to violate the Indiana ex post facto clause while, in *Smith v. Doe*, 538 U.S. 84 (2003), the United States Supreme Court found a very similar act *not* to violate the ex post facto clause of the U.S. Constitution, despite having used the same analytical framework).

Considering Lacey's status as a pro se litigant, the parties' use of case law interpreting the ex post facto clause of the Indiana Constitution, and the slightly broader protection of rights afforded by the Indiana clause, the Court interprets this Complaint as bringing claims under both clauses.

11

Lacey contends that his current re-registration requirement is a retroactive increase in punishment such that it violates the ex post facto clause of the United States Constitution. He argues that "[a]pplying HEA 1303 to revive a registration obligation that was already confirmed as expired—based on conduct occurring in 2006 and 2007—is precisely" the kind of retroactive increase in punishment that the ex post facto clause is intended to prevent. (ECF No. 3 at 3). Defendants disagree. They argue that Lacey cannot satisfy the test for establishing a violation of the ex post facto clause of either the U.S. or Indiana Constitutions because he cannot demonstrate that SORA, as applied to his situation, is sufficiently punitive in effect.

The Indiana Supreme Court has adopted the "intents-effect" test established by the United State Supreme Court in *Smith v. Doe*, 538 U.S. 84 (2003) to evaluate ex post facto challenges. *See Wallace v. State*, 905 N.E.2d 371, 378 (Ind. 2009). Under that test, "a court first determines whether the legislature meant the statute to establish civil proceedings. If the intention of the legislature was to impose punishment, then that ends the inquiry, because punishment results." *Id*. "If, however the court concludes that the legislature intended a non-punitive regulatory scheme, then the court must further examine whether the statutory scheme is so punitive in effect as to negate that intention thereby transforming what had been intended as a civil regulatory scheme into a criminal penalty." *Id.*

Courts have held that SORA—before its most recent amendment—was properly characterized as non-punitive, as Indiana intended to enact a civil, regulatory scheme when it was passed. *See, e.g. Hope*, 9 F.4th at 530-31. Lacey does not argue that the amendments have changed the non-punitive intent of the statute. Therefore, the Court moves to the second inquiry. The Indiana Supreme Court follows the same test for determining the effects of a regulatory scheme as

does the Supreme Court. *See Wallace*, 905 N.E.2d at 379 (citing *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168-69 (1963)). The test requires courts to consider the following seven factors:

> (1) Whether the sanction involves an affirmative disability or restraint, (2) whether it has historically been regarded as a punishment,(3) whether it comes into play only on a finding of scienter, (4) whether its operation will promote the traditional aims of punishment—retribution and deterrence, (5) whether the behavior to which it applies is already a crime, (6) whether an alternative purpose to which it may rationally be connected is assignable for it, and (7) whether it appears excessive in relation to the alternative purpose assigned.

*Id*.

The Court here makes only a preliminary determination of reasonable likelihood of success, so makes only a preliminary determination as to which way each of the factors will lean. As explained below, the Court's consideration of each factor leads to a finding that Lacey has a reasonable likelihood of success on his ex post facto claim.

### i. Affirmative Disability or Restraint

Courts first consider "[w]hether the sanction involves an affirmative disability or restraint." *Mendoza-Martinez*, 372 U.S. at 168. The amendments here have the result of requiring Lacey to register with the sex offender registry, which constitutes a significant affirmative obligation. *See Wallace*, 905 N.E.2d at 379.

Defendants argue that, nonetheless, the Court should find this factor to weigh in favor of treating the act as non-punitive. (ECF No. 10 at 14-16). Their argument rests on a comparison between this case and an Indiana Supreme Court case, *Jensen v. State*, 905 N.E.2d 384, 391 (Ind. 2009). In *Jensen*, the petitioner was convicted of two qualifying offenses which, at the time of his convictions, required him to report and register as a sex offender for a period of ten years. *Jensen*, 905 N.E.2d at 388-89. Two years into his ten-year registration period, the Indiana Legislature amended SORA's definitions in such a way that increased the petitioner's registration requirement

13

length from ten years to life. *Id.* at 389. The petitioner filed suit, alleging violation of the ex post facto clause of both the United States and Indiana Constitutions. *Id.* In considering this first factor, the court determined that, because the petitioner was already subject to the ten-year registration requirement, the increase in time from ten years to life did not impose any greater burden on the petitioner. *Id.*at 391-92.

But *Jensen* is distinguishable from the case at hand in a crucial respect. In *Jensen*, the petitioner's registration requirement length changed while he was already in a registration period. Here, Lacey had already completed his term. Further, Lacey has received a letter from IDOC confirming his registration requirement was expired, and a stipulation of dismissal from the state court confirming the same. At this time, Defendants have not convinced the Court that Lacey's situation—requiring re-registration as opposed to simply lengthening the time period of an already existing registration requirement—is not additionally burdensome in such a way to distinguish Lacey's situation from the situation of the petitioner in *Jensen*.

The Court finds it likely that this factor weighs in favor of treating the effects of SORA as applied to Lacey as punitive.

### ii.  Historically Regarded as Punishment.

Second, courts consider "whether [the sanction] has historically been considered as a punishment." *Mendoza-Martinez*, 372 U.S. at 168. While the *Wallace* court noted that SORA does not expressly impose sanctions that have historically been considered punishment, it ultimately found that burdens imposed by SORA's registration requirements were comparable to the conditions of parole/probation and, therefore, the second factor favored treating the statute as punitive. *See* 905 N.E.2d at 380-81. Other Indiana courts have followed suit. *See, e.g. Lemmon v. Harris*, 949 N.E.2d 803, 811 (Ind. 2011); *Gonzalez v. State*, 980 N.E.2d 312, 317-18 (Ind. 2013).

14

The United States Supreme Court, on the other hand, has found this factor weighs in favor of a non-punitive finding, when considering similar registration requirements. *See Smith*, 538 U.S. at 99. The Seventh Circuit agreed when it considered SORA in 2021, citing *Smith* in finding that "this factor, while close, tips in favor of Indiana." *Hope*, 9 F.4th at 532.

In arguing that this factor should weigh in favor of finding the effects of the Act as applied to Lacey are non-punitive, Defendants once again cite *Jensen*, stating that the *Jensen* court considered whether the Act imposed an *additional* shaming punishment to which the petitioner was not already exposed. ECF No. 10 at 16 (citing *Jensen*, 905 N.E.2d at 392). The Court finds this unpersuasive for the same reason as explained in its reasoning regarding the first factor—here, Lacey *is* exposed to additional punishment, considering he is currently not on the registry and, prior to IDOC's letter of May 14, 2026, had no expectation that his registration status would ever change.

The Court finds it likely that this factor weighs in favor of treating SORA's effects, as applied to Lacey, as punitive.

### iii. Scienter

Third, courts consider "whether [the statute] comes into play only on a finding of scienter." *Mendoza-Martinez*, 372 U.S. at 168. Defendants concede that the third factor "slightly favors" treating the effects of the amended Act as punitive when applied to Lacey, so the Court will not conduct additional analysis as to this factor at this time.

### iv. Traditional Aims of Punishment

Fourth, courts consider "whether [the statute's] operation will promote the traditional aims of punishment – retribution and deterrence. *Id.* at 168. While the *Wallace* court found this to indicate that the statute was punitive, *see Wallace*, 905 N.E.2d at 381-82, the Indiana Supreme

Court has, in more recent opinions, found it to weigh toward a finding of non-punitive, *see, e.g., Tyson v. State*, 51 N.E.3d 88, 95 (Ind. 2016); *Jensen*, 905 N.E.2d at 393, *Lemmon*, 949 N.E.2d at 812. As the Indiana Supreme Court explained in *Jensen* (and reiterated in *Lemmon*), SORA deters criminal conduct and promotes community condemnation of offenders—both of which are traditional aims of punishment—but it promoted those aims before, during, and after Lacey's relevant offenses and convictions. *Jensen*, 905 N.E.2d at 393.

The Court agrees with Defendants that this factor should likely weigh in favor of finding the effects of SORA are non-punitive as applied to Lacey.

### v.    Applicability Only to Criminal Behavior

Fifth, courts consider "whether the behavior to which [the statute] applies is already a crime." *Mendoza-Martinez*, 372 U.S. at 168. When a "statute applies only to behavior that is already, and exclusively, criminal," it "supports a conclusion that its effects are punitive." *Wallace*, 905 N.E.2d at 382. It was Lacey's criminal conviction that triggered his obligations under SORA, which counsels toward a finding that the Act is punitive in effect as to Lacey.

Defendants state that some "Indiana courts have weighed this factor in favor of treating the enhanced registration period as non-punitive," citing *Lemmon* and *Jensen*. (ECF No. 10 at 18). But in both of those cases, the fact that the petitioner was already a current registrant at the time the Act was amended in such a way as to increase the length of their registration requirement influenced the court's decision to find this factor to weigh toward a non-punitive finding. *See Jensen*, 905 N.E.2d at 393 ("With the exception of an extended period of registration, Jensen is in the exact position he was in when he pleaded guilty."); *Lemmon*, 949 N.E.2d at 812 ("Like Jensen, Harris is in the same position as he was when he pled guilty except for an extended period of registration.").

16

As explained above, Lacey's situation is different, as prior to the amendment he had been told his registration requirement had expired. Because the Court is not convinced that this distinction does not matter, it finds it likely that this factor will weigh towards a finding that the effects of SORA as applied to Lacey are punitive.

### vi.  Advancing a Non-Punitive Interest

Sixth, courts consider "whether an alternative purpose to which [the statute] may rationally be connected is assignable for it." *Mendoza-Martinez*, 372 U.S. at 168-69. The alternative purpose here is the legitimate and regulatory non-punitive interest the statutory scheme "undoubtedly" advances. *Wallace*, 905 N.E.2d at 383. The Court finds it is likely this factor will weigh towards a finding that the effects of SORA as applied to Lacey are non-punitive.

### vii. Excessive in Relation to the Alternative Purpose Assigned

The seventh and final factor to be considered is "whether [the statute] appears excessive in relation to the alternative purpose assigned." *Mendoza-Martinez*, 372 U.S. at 168-69. This factor is afforded "considerable weight" in determining whether the statute is punitive in effect. *Jensen*, 905 N.E.2d at 394. The Court will need to take additional time to consider this factor before making its final determination.

On the one hand, as the Seventh Circuit has explained in the context of a prior ex post facto challenge to SORA, "SORA's registration requirements rationally relate to Indiana's power to protect the safety of its citizens, despite its burden on sex offenders." *Hope*, 9 F.4th at 533. But, on the other hand, the Court finds Lacey's specific circumstances to be worthy of extra consideration—at the time IDOC notified him of his requirement to re-register, Lacey was no longer on the sex offender registry, and had no expectation that his status would change.

17

In arguing that this factor should counsel the court towards a non-punitive finding, Defendants cite the Indiana Supreme Court's decision in *Tyson*, 51 N.E.3d 88, 92 (Ind. 2016). In *Tyson*, the petitioner lived in Texas, where he was convicted for an offense that required him to register as a sex offender until 2014. *Id.* at 90. At the time of his offense, he would not have had to register in Indiana if he moved there. In 2006, however, the Indiana legislature amended SORA in such a way as to require the petitioner, when he moved to Indiana in 2009, to register with the Indiana sex offender registry. *Id.* The petitioner challenged the Indiana registration requirement as violating the ex post facto clause of the United States and Indiana Constitutions. *Id.* at 92. The Indiana Supreme Court ultimately found no ex post facto violation—it found the statute was not punitive as applied to the petitioner because the amendment "had little impact on [the petitioner]. *Id.* at 96. At the time he had to register in Indiana, he was already registered as a sex offender where he was living, albeit in another state. *Id.* The court explained that the petitioner's circumstances were similar to those of the petitioner in *Jensen*, who was also already on a registry—"We simply cannot say that transferring the obligation [to register] upon moving is any more punitive than lengthening it to potentially last a lifetime." *Id.*

Defendants characterize *Tyson* as "nearly identical" to the matter before us. (ECF No. 10 at 19). The Court finds that the two situations differ in the same crucial respect as the situation before us differs from *Jensen*—Lacey, at the time of the statute's amendment, was *not* registered as a sex offender where he lived. While he may be required to register pursuant to Illinois's registration law, he does not live there and so was not experiencing the burdens that registration imposes. The amended act's effect of requiring re-registration is a severe consequence for Lacey, though additional analysis will be needed before the Court makes its final finding as to which way this factor leans.

18

As the Seventh Circuit explained in *Hope*, "[m]aintaining, extending, or modifying a duty under SORA generally is not punitive, but imposing a new duty is." 9 F.4th at 522. The Court here finds, after a review of the facts and case law presented by the parties, that Lacey's situation is more akin to the imposition of a new duty than it is to the maintenance, extension, or modification of an existing duty. For that reason, and after consideration of the punitive and non-punitive nature of the seven factors as they apply to Lacey and his circumstances, the Court finds there to be a reasonable likelihood that Lacey will succeed on his ex post facto claim.

### 4.  Balancing of Equities

Because the Court finds that Lacey has made out his threshold case for injunctive relief, it now turns to the second stage—the balancing phase. The court uses a "sliding scale" when balancing the harms and the public interests. *Turnell v. CentiMark Corp.*, 796 F.3d 656, 662 (7th Cir. 2015). As discussed above, Lacey faces imminent, irreparable harm should the Court decline to grant him injunctive relief.

Defendants offer no argument as to why the balance of equities tilts in their favor—yet the Court acknowledges the great importance of the Act's registration requirements to public safety. However, "it is well established that the vindication of constitutional rights serves the public interest." *Hope*, 2017 WL 1301569, at *8.

### III.    CONCLUSION

For the reasons explained above, the Court:

(1) GRANTS the Motion for Temporary Restraining Order and Preliminary Injunction (ECF No. 3); and

(2) Finds that no bond shall be required of Lacey under Federal Rule of Civil Procedure 65(c).

**SO ORDERED** this 28th day of July 2026.

s/Holly A. Brady
CHIEF JUDGE HOLLY A. BRADY
UNITED STATES DISTRICT COURT